**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>**Plaintiff,**<br>v.<br>[46] RODNEY A. MALDONADO-MARQUEZ,<br>**Defendant.** | **CRIMINAL NO. 25-365-46 (RAM)** |

**MEMORANDUM & ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge.

Pending before the Court is defendant Rodney A. Maldonado-Marquez's ("Defendant" or "Mr. Maldonado") *Ex Parte Emergency and Sealed Motion for Hearing and for an Order Authorizing Preparation of the Transcript of the Sentencing Hearing and Permitting Counsel to Provide it to Mr. Rodney Maldonado Marquez* (the "*Motion*"). (Docket No. 897). For the reasons outlined below, the Court hereby **DENIES** Defendant's request.

## I. BACKGROUND

On September 4, 2026, Defendant was sentenced to a term of imprisonment of time-served on Count One of the Indictment, charging Defendant with conspiracy to possess with intent to distribute / distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), 846 & 860. (Docket No. 789). Defendant received this sentence because he had already served 44

months in prison for related conduct cases. Defendant alleges that during his incarceration, he received threats and physical injuries because of false rumors that he was a cooperating witness in a federal case. Id. ¶ 2. Mr. Maldonado further claims that upon his release, he could not return to his residence in the Virgilio Dávila Housing Project and that after moving in with his mother at the Sierra Linda Housing Project, he has been forced to move because of threats. Id. ¶¶ 3-4. Defendant contends that the only way to dissipate the false rumors and overcome his dangerous situation is by receiving a copy of the transcripts of his sentencing hearing which would clarify that he did not cooperate with the prosecution in this case. Id. ¶ 5. Therefore, Mr. Maldonado requests a copy of his transcripts so that they can be made public. Id. at 3.

The Court held a motion hearing on October 27, 2026. Defendant did not take the stand nor identify the individuals that were making the alleged threats. Rather, defense counsel explained that while incarcerated at the Metropolitan Detention Center ("MDC") in Puerto Rico, Mr. Maldonado was threatened, physically hurt, and had to be moved to the Special Housing Unit ("SHU"). Upon Defendant's release, he did not move to the Virgilio Dávila Housing Project because individuals there believe he is a "snitch." Mr. Maldonado instead went to the Sierra Linda Housing Project in Bayamón, Puerto Rico, where his mother lives. However, a few days

ago, individuals arrived at his mother's house and emphatically told Mr. Maldonado that he must leave the Sierra Linda Housing Project and that they did not want him living in any housing project in Bayamón. Defendant left to live with a relative in a neighborhood that is close to the public housing projects in Bayamón. Defense counsel stated that "they" want his client to submit evidence he did not cooperate, and are requesting a copy of the sentencing transcript. Although defense counsel conceded that it is unclear whether producing the transcripts will be a complete solution to Mr. Maldonado's problem, he argued that the severity and nature of the threats warrant release of Defendant's transcripts. Furthermore, he asserted that Defendant had a constitutional right to his transcript.

On its part, the Government cautioned that agreeing with Defendant's request would amount to collaborating with conduct that could constitute a violation of 18 U.S.C. § 1513 because individuals are trying to interfere with a person they believe could be a witness in a criminal manner. The Government also expressed concern that providing transcripts in this instance would lead to an "avalanche" from other defendants. Lastly, the Government informed all present that it is available to meet with Defendant and investigate the threats, but that Defendant would need to provide names to do so.

## II. DISCUSSION

### A. The Right to Access Judicial Documents in Criminal Proceedings

The Supreme Court recognizes "a qualified First Amendment right of access to records and proceedings connected to the criminal justice system[.]" El Día, Inc. v. Hernández Colón, 963 F.2d 488, 494-95 (1st Cir. 1992) (citing Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) (Press-Enterprise II); Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984) (Press-Enterprise I); Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980)). Courts are tasked with examining "two 'complementary considerations' to determine if a constitutional right of access applies to particular documents," namely whether: (1) similar materials "have been open to the public in the past because of a tradition of accessibility implies the favorable judgment of experience," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." In re Bos. Herald, Inc., 321 F.3d 174, 182 (1st Cir. 2003) (quotations omitted). If both considerations are met, "[t]he presumption of openness may be overcome **only by an overriding interest based on findings that closure is essential to preserve higher values** and is narrowly tailored to serve that interest." Press-Enterprise I, 464 U.S. at 510 (emphasis added). Furthermore,

the overriding interest must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered. Id. Notably, courts have rejected claims based on First Amendment rights of access to certain judicial documents including discovery materials, withdrawn plea agreements, affidavits supporting search warrants, presentence reports, and CJA application materials. In re Bos. Herald, Inc., 321 F.3d at 183, 191 (collecting cases). Furthermore, the First Circuit has held that trial courts enjoy "considerable leeway" when determining whether to seal judicial records. *See* Siedle v. Putnam Invs., Inc., 147 F.3d 7, 10 (1st Cir. 1998).

In addition to the First Amendment right of access, the acknowledgment "'that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system,' ... has given rise to a presumption that the public has a common-law right of access to judicial documents." In re Providence J. Co., Inc., 293 F.3d 1, 9 (1st Cir. 2002) (quoting Siedle, 147 F.3d at 10 (1st Cir. 1998)) (citation and internal quotation marks omitted). This "presumptive right of access attaches to those materials 'which properly come before the court in the course of an adjudicatory proceeding and which are relevant to that adjudication.'" Id. at 9-10 (quoting FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 412–13 (1st Cir. 1987)).

**B. Transcripts of Criminal Cases in the District of Puerto Rico**

On April 11, 2023, this District issued its Fourth Amended General Standing Order (the "Standing Order") providing that transcripts of all criminal proceedings in the District shall remain under sole custody of counsel of record and will not be provided to defendants or third parties, unless otherwise authorized via court order. *See* In Re: General Standing Order - Transcripts in Criminal Cases, Misc. Case No. 20-mc-0061, Docket No. 5. Per the Standing Order, this limitation is "to protect the safety of federal inmates who may be coerced by other inmates into providing transcripts of their guilty plea hearings or sentencing hearings to show that they did not receive a safety valve reduction or were not cooperating in the prosecution of other defendants." Id.

On October 27, 2026, the Court issued a letter addressing a request to reconsider the Standing Order. *See* In Re: General Standing Order - Transcripts in Criminal Cases, Misc. Case No. 20-mc-0061, Docket No. 7. Therein the Court rejected the request, citing the composition of the Court's criminal docket and statistics concerning the violent deaths of defendants. Id. at 1. Specifically, the Court noted that per the United States Sentencing Commission Statistics for Fiscal Year 2025, the composition of the District of Puerto Rico's criminal docket based on sentences

imposed was: 48.3% Drugs, 10.4% Firearms, 6% Robbery, and 10.5% Immigration. Id. at 2. Furthermore, the Court highlighted that:

> According to statistics provided by the U.S. Probation Office for the District of Puerto Rico, between 2021 and 2026 a total of 227 persons under post-conviction supervision died of violent causes. The total number of such deaths nationwide (94 districts) was 983. This means that the District of Puerto Rico suffered 23% of all violent deaths of persons under federal post-conviction supervision nationwide during 2021 and 2026.

Id. at 3. The Court also noted that the District of Puerto Rico had the highest number of deaths by homicide of persons under pretrial supervision in the nation during the 2021-2026 period. Id. This means that the District of Puerto Rico has the highest number of violent deaths of people under pre-trial and post-conviction supervision in the nation. Furthermore, the Court caveated that these statistics "do not include cases of individuals murdered while at the Residential Reentry Center ('RRC') because those individuals were under Federal Bureau of Prisons Custody while at the RRC." Id.

**C. Analysis**

The Court recognizes that the issue before it is complex and rife with competing interests. Here, Defendant is requesting the transcript of his own sentencing hearing, unlike in traditional First Amendment access cases. Certainly, a defendant has a more immediate interest in the transcript of their own criminal

proceedings than third parties. However, Defendant is not requesting his transcript to challenge his conviction nor question his sentence. Rather he is seeking the transcript solely to *publicize it to third parties* and dissipate rumors that he cooperated with the Government.

The Court notes that Defendant has not provided *any* citations or supporting authorities as required by Local Rule 112. This alone can warrant denial of the request. Nevertheless, the Court is of the view that Defendant's right to his sentencing hearing transcript is overridden because its closure is essential to preserve higher values, namely the safety of all criminal defendants in general and those that cooperate with the Government. *See* Press-Enterprise I, 464 U.S. at 510.

The Court shares the Government's concern that granting this request for transcripts to publicize their contents and respond to rumors of cooperation could lead to a deluge of analogous motions from defendants. While the Court does not question the veracity and severity of the threats alleged by Mr. Maldonado, it worries that acquiescing to his request may make Defendant's case the norm. As referenced above, the District of Puerto Rico unfortunately has the highest rate of violent deaths of people under pre-trial and post-conviction supervision in the nation. Defendant's counsel was alerted to this fact during the hearing on October 27, 2026.

Providing sentencing transcripts regularly would greatly assist bad actors with targeting cooperators, further endangering others and elevating the death toll captured by the statistics. Lastly, the Supreme Court has established that indigent defendants may have a right to publicly funded transcripts, *see* Eskridge v. Washington State Bd. of Prison Terms & Paroles, 357 U.S. 214, 216 (1958). But that right is premised on promoting justice instead of obstructing it. Thus, although the Court is sympathetic to Defendant's claims, its duty to safeguard all defendants requires denying his request.

## III. CONCLUSION

Given the existence of an overriding interest in ensuring the safety of all defendants, and the lack of citations and supporting authorities to bolster Mr. Maldonado's request, the Court hereby DENIES the *Motion* at Docket No. 897.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 29th day of October 2026.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE